IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRYANT OBEN ARREY | : | CIVIL ACTION |
| | : | |
| v. | : | No. 24-0589 |
| | : | |
| OFFICER JONATHAN ZEBLEY and BROOKHAVEN POLICE DEPARTMENT | : : : | |

## MEMORANDUM

**Judge Juan R. Sánchez**                                                           **December 30, 2024**

      Pro se Plaintiff Bryant Oben Arrey brings this 42 U.S.C. § 1983 action against Defendants Police Officer Jonathan Zebley and the Brookhaven Police Department alleging various civil rights abuses pertaining to Arrey's arrest on July 4, 2023 and its aftermath. Defendants seek to dismiss all but one of the claims in Arrey's Amended Complaint for failure to state a claim. Because Arrey has not sufficiently plead the claims at issue, the Court will grant Defendants' motion.

**BACKGROUND**

      Plaintiff Bryant Oben Arrey, an Uber driver, alleges that around midnight on July 4, 2023, he was asleep in his car while parked on a deserted street in Delaware County. Amend. Compl. ¶¶ 10-11. Defendant Officer Jonathan Zebley and four other Brookhaven Police Department officers approached Arrey's car and knocked on the window, asking Arrey what he was doing, to which Arrey explained he was sleeping because there were no requested Uber rides and the poor weather conditions made it unsafe to drive. *Id.* ¶¶ 12-13. Officer Zebley then asked to search Arrey's vehicle and conduct a field sobriety test, to which Arrey consented. *Id.* ¶ 14. During the sobriety test, Zebley asked Arrey why his eyes were red and Arrey responded, "[T]hat's how my eyes [are]." *Id.* ¶ 16. Zebley told Arrey he was under arrest for driving under the influence, and when Arrey asked why, Zebley explained that Arrey was parked six feet from the curb and he believed

Arrey had "consumed something he is not sure of, but not alcohol." *Id.* Following the arrest, Zebley took Arrey to a hospital for a blood draw and then to the police station for questioning and fingerprinting. *Id.* ¶ 17.

Six weeks after the arrest, the blood test results came back negative for drugs and alcohol, which Arrey alleges "should have cleared defendant Jonathan Zebley's suspicion." *Id.* ¶ 19. Arrey alleges "defendant Jonathan still charged [him]" with driving under the influence, and subsequently, provided the court with false affidavits to mislead prosecutors. *Id.* ¶ 20-21. Arrey claims the false statements included: Officer Zebley found a substance resembling marijuana in Arrey's car, Arrey was parked 10 feet from the curb and blocking traffic, and Arrey has consumed a synthetic drug. *Id.* ¶ 22-24. At Arrey's probable cause hearing, prosecutors decided "not to prosecute without further investigation." *Id.* ¶ 25. The case was postponed until December 2023. *Id.* ¶ 26. At the December 2023 hearing, prosecutors sought to retest Arrey's blood for synthetic drugs, informing Arrey that the charges would be dropped if no substance was found. *Id.* ¶ 26-27. The case was then postponed to January 2024. *Id.* ¶ 27. At the January 2024 hearing, prosecutors informed Arrey that all tests for synthetic drugs had come back negative, and that they were dropping the charges. *Id.* ¶ 28. Shortly before the hearing was about to begin, Officer Zebley requested a meeting with the prosecutor. *Id.* ¶ 29. Following the meeting, the prosecutor returned to court and said, "I don't know why the police department is bent on having this guy prosecuted." *Id.* ¶ 30-31. The judge asked the prosecutor why he had changed his mind and called a meeting in chambers. *Id.* ¶ 33. The judge recused herself from the case and it was transferred to another county, where charges were later withdrawn. *Id.*

On February 2, 2024, Arrey filed this pro se action against Zebley and the Brookhaven Police Department alleging various civil rights violations including false arrest and malicious

prosecution (later filing an Amended Complaint on May 2, 2024). Defendants move to dismiss all but one of Arrey's claims for failure to state a claim upon which relief may be granted.

**STANDARD**

To survive a motion to dismiss, a plaintiff must plead sufficient facts that when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To make this determination, a reviewing court must (1) determine the elements required to plead each claim, (2) identify which allegations are conclusory and may not be accepted as true, and (3) assess whether the remaining, non-conclusory allegations plausibly entitle the plaintiff to relief. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

Where a plaintiff is pro se, a court is to construe the allegations liberally, applying the "relevant legal principle even when the complaint has failed to name it." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). While this standard affords pro se litigants some flexibility, they must still allege sufficient facts to support their claims. *Vogt*, 8 F.4th at 185. Courts are not tasked with acting "as an advocate to identify any possible claim that the facts alleged could potentially support." *Doe v. Allegheny Cnty. Hous. Auth.*, Civ. No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024).

**DISCUSSION**

In their motion, Defendants assert multiple deficiencies in Arrey's Amended Complaint that warrant dismissal of all claims except Arrey's Fourth Amendment claim for false arrest against

Officer Zebley in his individual capacity. The Court agrees with Defendants' arguments and addresses each in turn.[1]

I. **Claims against the Brookhaven Police Department**

Defendants seek to dismiss the Brookhaven Police Department as a defendant, arguing the department is not a proper defendant because it is "simply a subdivision of its municipality." ECF No. 14 at 7. Because the Brookhaven Police Department is not a proper defendant, the Court will dismiss it as a defendant. To bring a § 1983 suit against a municipal agency, a plaintiff must name the municipality itself. *Sorrells v. Philadelphia Police Dep't*, 652 F. App'x 81, 83 (3d Cir. 2016) (citing *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997). For this reason, parties may not separately sue governmental sub-units, such as police departments. *Moore v. Montgomery Cnty. Dist. Att'y Off.*, Civ. No. 22-2642, 2023 WL 5972045, at *2 (3d Cir. Sept. 14, 2023); *Bonenberger*, 132 F.3d at 25 n.4 (courts are to view the municipality and its police department as a "single entity for purposes of section 1983 liability").

In this action, Arrey has sued the Brookhaven Police Department—a subdivision of Brookhaven Borough—without naming the Borough itself. While Arrey previously sued the "Municipality of Brookhaven," he voluntarily dismissed that defendant on February 29, 2024. *See* ECF No. 7. As a subdivision of the Borough, the Brookhaven Police Department cannot be sued

---

[1]   In addition to the specific claims described below, the Court will also dismiss Count I as duplicative of Arrey's other claims. In Count I, Arrey claims "damages under § 1983 for the injuries set forth. . . against Defendants Jonathan Zebley and Brookhaven Police for violation of my constitutional rights under color of law." Amend. Compl. ¶ 35. These allegations duplicate those made elsewhere in the Amended Complaint, albeit with less specificity. Because these claims can be consolidated with the more specific allegations elsewhere, Count I will be dismissed. *See Telford Borough Auth. v. U.S. Env't Prot. Agency*, Civ. No. 12-6548, 2020 WL 605666, at *7 (E.D. Pa. Feb. 6, 2020) ("The Court has authority to dismiss duplicative claims on motion to dismiss . . .."); *Giannone v. Ayne Inst.*, 290 F. Supp. 2d 553, 566 (E.D. Pa. 2003) (collecting cases where courts have dismissed duplicative claims).

separately under § 1983. Accordingly, the Brookhaven Police Department will be dismissed as a defendant.

## II. Claim for Supervisory Liability

Defendants also seek to dismiss Arrey's claims of supervisory liability, arguing he has named no supervisory defendants nor described their personal involvement. ECF No. 14 at 9. When bringing claims under § 1983, plaintiffs must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. A defendant must have personal involvement in the alleged wrongs, meaning "liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Such involvement may include personal direction, actual knowledge, or acquiescence; all of which must be stated with "appropriate particularity." *Id.* Arrey's claims for supervisory liability fall short of this pleading standard because, as Defendants note, he has not named a single supervisor nor indicated that any supervisor was sufficiently involved in the alleged wrongs to be held liable. Conclusory allegations will not survive a motion to dismiss. Arrey merely alleges that "Defendant Brookhaven Police Department Is the employer and holds supervisory liability over defendant officer Jonathan Zebley." Amend. Compl. ¶ 8. Arrey also refers to suing Brookhaven Police Department "under the theory of respondent superior." *Id.* ¶ 2. Section 1983 liability specifically precludes these types of claims and therefore, they are dismissed.

## III. Fourteenth Amendment Claims

In his Amended Complaint, Arrey alleges Defendants violated his Fourteenth Amendment right to be "free from unreasonable search and seizure of his person." Amend. Compl. ¶ 30. Defendants argue the claim should be dismissed under the "more-specific provision rule" because his claims are better analyzed under the Fourth Amendment. The Court agrees.

"Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal citation and quotation marks omitted); *see Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) ("more-specific provision rule" bars allegations of substantive due process where the claim is covered by a specific constitutional provision). The Fourteenth Amendment false arrest and malicious prosecution claims alleged by Arrey are the types of claims typically analyzed under the Fourth Amendment, which governs searches and seizures. *See Albright*, 510 U.S. at 274 ("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it"); *Manuel v. City of Joliet*, Ill., 580 U.S. 357, 367 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment."); *see also* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."). Because Arrey's claims for false arrest and malicious prosecution are best construed as Fourth Amendment claims, the Fourteenth Amendment claims will be dismissed.

**IV.   Claim for Malicious Prosecution**

In Count III of the Amended Complaint, Arrey brings malicious prosecution claims alleging Defendants initiated criminal proceedings against Arrey without probable cause. Amend. Compl. ¶¶ 39-42. To bring a malicious prosecution claim, a plaintiff must establish five elements: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the

defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Halsey v. Pfeiffer*, 750 F.3d 273, 296–97 (3d Cir. 2014). In moving to dismiss Arrey's malicious prosecution claim, Defendants center their argument on element five, claiming Arrey has not sufficiently shown a deprivation of liberty. *See* ECF No. 14 at 10-11. Because Arrey has not shown such a deprivation, his claim for malicious prosecution will be dismissed, albeit without prejudice.

A federal malicious prosecution claim is "intended to redress [the] deprivation of liberty accompanying prosecution, not prosecution itself." *DiBella v. Borough of Beachwood,* 407 F.3d 599, 603 (3d Cir. 2005). The focus on the deprivation accompanying prosecution means that "[w]hat occurred prior to the prosecution, that is, the time between arrest and the lodging of formal charges, is not a basis for a malicious prosecution claim. What matters are the conditions imposed after prosecution began." *Roberts v. Caesar's Ent., Inc.*, 72 F. Supp. 3d 575, 581 (E.D. Pa. 2014). To assess whether a plaintiff has suffered a deprivation of liberty, courts look for pre-trial detention or "some onerous types of pretrial, non-custodial restrictions." *DiBella,* 407 F.3d at 603. The Third Circuit has found such onerous restrictions where, for example, a plaintiff had to "post a $10,000 bond, attend all court hearings including trial and arraignment, contact Pretrial Services on a weekly basis, and was prohibited from traveling outside New Jersey and Pennsylvania." *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998) (cleaned up). The Circuit also found such restrictions where following arraignment, a plaintiff was released on an unsecured bail of $50,000, spent over an hour being photographed and fingerprinted, and was required to travel from her home in California to Pennsylvania twelve times to attend pre-trial hearings to avoid issuance of a bench warrant. *Black v. Montgomery Cnty.*, 835 F.3d 358, 368 (3d Cir. 2016). By contrast, in *DiBella*, the Circuit found no deprivation of liberty where plaintiffs "were only issued a summons;

they were never arrested; they never posted bail; they were free to travel; and they did not have to report to Pretrial Services." 407 F.3d at 603; *see also Quiah v. Devereux Found., Inc.,* Civ. No. 19-4630, 2020 WL 5645696, at *7 (E.D. Pa. Sept. 22, 2020) (no deprivation where unsecured bail was set to $2,500, plaintiff was required to regularly report to pre-trial services, and plaintiff had to attend fourteen pre-trial hearings each requiring over three hours of round-trip travel).

In his Amended Complaint, Arrey does not allege pre-trial detention nor any pre-trial conditions—bail, travel restrictions, or pre-trial services reporting requirements, for example—that would rise to the level of deprivation of liberty found in other cases. *See; e.g, Black*, 835 F.3d at 368; *Gallo*, 161 F.3d at 222. In his response, Arrey argues he suffered a deprivation of liberty because he was arrested, taken to the hospital, detained at the police station, forced to defend himself against false charges, made to incur legal fees, and because he suffered damage to his reputation and emotional distress. *See* ECF No. 15 at 5.[2] While the Court does not question the impact of this experience on Arrey's life, under the law, these allegations do not amount to a deprivation of liberty for a malicious prosecution claim because they either occurred *before* charges were filed or do not meet the degree of deprivation required. Therefore, Arrey's claim for malicious prosecution will be dismissed. *See Macolino v. Twp. of Lower Moreland*, No. CV 18-1476, 2020 WL 5820742, at *8 (E.D. Pa. Sept. 30, 2020) (dismissing claim for malicious prosecution because "apart from a few court appearances, there is no allegation in the Amended Complaint that bail was set or that Plaintiff was required to pay a bond, that Plaintiff was required to contact pretrial services or was subject to pretrial conditions, that Plaintiff's right to interstate

---

[2] While it is "well-established that a complaint may not be amended by the briefs in opposition to a motion to dismiss," *Hanna v. Menges*, Civ. No. 21-3812, 2024 WL 1321057, at *4 (E.D. Pa. Mar. 27, 2024) (internal citation omitted), the Court responds to the arguments raised in Arrey's response to better explain why the malicious prosecution claim does not meet the required pleading standard, and does the same for other claims elsewhere in this memorandum.

travel was restricted, or that he was incarcerated."). However, the Court dismisses Arrey's malicious prosecution claim without prejudice because it is possible Arrey may plead sufficient facts to establish a plausible claim, such as by pleading facts that indicate to the Court that Arrey was in fact subject to onerous pretrial, non-custodial restrictions or pre-trial detention that occurred after charges were filed.[3]

### V.   Claim against Officer Jonathan Zebley in his official capacity

Arrey sues Defendant Officer Jonathan Zebley in both his individual and official capacities, the latter of which Defendants move to dismiss. Because Arrey has failed to plead a claim against Zebley in his official capacity, this claim will also be dismissed. An individual capacity suit seeks to impose personal liability on an officer, whereas an official capacity suit is "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). This means an official capacity suit is not a suit against the individual official, but rather, a suit against the entity that must meet pleading standards for claims against an entity to be plausible. *Kentucky*, 473 U.S. 159 at 166.

---

[3]   Defendants also seek to dismiss Arrey's claims for conspiracy, in which he alleges Defendants "committed an act of conspiracy motivated by malice or an improper purpose in initiating [the charges against him]." Amend. Compl. ¶ 43. "To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law reached an understanding to deprive him of his constitutional rights." *Harvard v. Cesnalis*, 973 F.3d 190, 207 (3d Cir. 2020) (internal citation omitted). In addition, a plaintiff must also show that the constitutional deprivation actually occurred. *Black*, 835 F.3d at 372, n. 14 (3d Cir. 2016). As explained, Arrey has failed to sufficiently plead his claim for malicious prosecution, which is the basis for his conspiracy claim. Because his claim for conspiracy rises and falls with his claim for malicious prosecution, the conspiracy claim will also be dismissed. *See id.* (dismissing a conspiracy claim where a plaintiff could not succeed on the underlying constitutional claims). Because the claim for malicious prosecution is dismissed without prejudice, Arrey's conspiracy claim will also be dismissed without prejudice.

To impose § 1983 liability against a municipal entity, plaintiffs may allege either unconstitutional policies or customs, or a failure by the municipality that reflects a deliberate or conscious choice. *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019); *see Monell*, 436 U.S. 658 (1978). Here, Arrey brings claims alleging the "constitutional violations were committed because of the policies and customs of the Brookhaven Police Department . . .". Amend. Compl. ¶ 2. To plead municipal liability for an unconstitutional policy or custom, a plaintiff must allege that a policy or custom itself violated the Constitution or if not unconstitutional itself, that it was the "moving force" behind an employee's constitutional violation. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014). A policy refers to official proclamations, policies, or edicts issued by final decisionmakers, whereas custom refers to conduct that "although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (internal citation omitted). As part of such a claim, a plaintiff must actually "identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). While alluding to the "systemic" nature of the harms against him in his response (*see* ECF No. 15 at 7), in the Amended Complaint, Arrey does not identify any policy, custom, or failure that may have resulted in the alleged harms. Nor does Arrey then link any of kind of policy, custom, or failure to his alleged injury. To plead municipal liability, a plaintiff must present the court with sufficient facts to make the claims plausible. Conclusory, threadbare allegations will not suffice. The claim against Zebley in his official capacity will be dismissed.[4]

---

[4]   In his response to the motion, Arrey clarifies that the policy or custom at issue is one of "pressuring prosecutors to pursue cases without probable cause," thus tying the policy or custom at issue to Arrey's claim for malicious prosecution. *Id.* at 4. While this policy or custom is not pled in his Amended Complaint, even had it been, the allegation would not have survived dismissal because a municipality cannot be held liable where there is no underlying constitutional violation and here, the Court has dismissed Arrey's claim for malicious prosecution. *See Mulholland v.*

## VI. Claims for Declaratory and Injunctive Relief

Lastly, Defendants move to dismiss Arrey request for a permanent injunction requiring the Brookhaven Police Department to adopt appropriate policies related to the hiring and supervision of its officers. *See* ECF No. 14 at 13-14. Because the Court will dismiss the Brookhaven Police Department as a defendant, relief against the Department is not available and the Court need not address whether an injunction would have been appropriate otherwise. Arrey also seeks declaratory relief against both the Department and Zebley, asking the Court to enter an order finding Defendants' conduct unconstitutional. Amend. Compl. at 7. The Department's dismissal as a defendant makes declaratory relief unavailable as to the Department. This request will also be dismissed as to Zebley because "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct." *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*); *see also Taggart v. Saltz*, Civ. No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm."). In his Amended Complaint, Arrey seeks to adjudicate past conduct: the July 4, 2023 arrest and the events thereafter. In his response, Arrey refers to the "real and immediate threat of similar constitutional violations" and his community's

---

*Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim."). And even if the malicious prosecution claim were to survive in a Second Amended Complaint, the policy or custom allegations here are too generalized to plead municipal liability. In his response, Arrey also references the "failure to adequately train and supervise Officer Zebley." *Id.* at 4. While such a failure is not alleged in his Amended Complaint, even if it had been, this allegation also does not meet the pleading standards for municipal liability. To bring a claim regarding a municipality's failure to train or supervise, a plaintiff must show deliberate indifference—a stringent standard of fault—establishing: "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Roman*, 914 F.3d at 798 (internal quotation marks and citations omitted). The vague, passing references to training and supervisory failures are insufficient to make out a plausible claim.

"risk of being subjected to similar false arrests," but there are no facts in the Amended Complaint to support these allegations. *See* ECF No. 15 at 7-8. Similarly, Arrey's references to "an ongoing pattern and practice of misconduct," *id.* at 8, are not described at all in the Amended Complaint, which discusses only the injury to Arrey that stemmed from the July 4, 2023 arrest. The request for declaratory relief will also be dismissed.

**CONCLUSION**

For failure to plead sufficient facts to state plausible claims, Arrey's claims in the Amended Complaint will be dismissed. Where a complaint in a civil rights case is subject to dismissal, courts in the Third Circuit are to grant leave to amend unless doing so would be inequitable or futile. *See LabMD Inc. v. Boback*, 47 F.4th 164, 192 (3d Cir. 2022) (citing *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). A review of the relevant federal law—and the fact that Arrey has already once amended his complaint[5]—indicates to the Court that further amendment would be futile on all claims apart from the malicious prosecution and conspiracy claims, for which the Court will grant Arrey leave to amend.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

[5] The Amended Complaint is Arrey's second attempt to plead his claims, filed shortly after Defendants filed their first motion to dismiss (ECF No. 11), which was dismissed as moot. Defendants' present motion to dismiss raises many of the same arguments raised in their first motion, which alerted Arrey to the potential deficiencies in his original complaint and provided an initial opportunity to correct them.