IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRYANT OBEN ARREY | : | CIVIL ACTION |
| | : | |
| v. | : | No. 24-0589 |
| | : | |
| OFFICER JONATHAN ZEBLEY | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                                                       **February 5, 2025**

In his Third Amended Complaint, pro se Plaintiff Bryant Arrey brings this 42 U.S.C. § 1983 action against Defendant Police Officer Jonathan Zebley alleging false arrest, abuse of process, and intentional infliction of emotional distress related to Arrey's arrest on July 4, 2023. Zebley seeks to dismiss all claims for failure to state a claim. Because Arrey has alleged plausible false arrest and abuse of process claims, the Court will deny Zebley's motion to dismiss as to those claims. However, because Arrey's claim for intentional infliction of emotional distress is insufficiently plead, the Court will dismiss that claim with prejudice.

**BACKGROUND**

Plaintiff Bryant Arrey, an Uber driver, alleges that around midnight on July 4, 2023, he was asleep in his car while parked a few feet from the curb on a deserted street in Delaware County. Third Am. Compl. ¶¶ 5-6. Sometime later, Arrey awoke to loud knocking on his window and saw Defendant Officer Jonathan Zebley and other Brookhaven Police Department officers outside his car. *Id.* ¶ 7. Zebley asked Arrey what he was doing, to which Arrey explained he was sleeping because there were no requested Uber rides and the weather conditions—heavy rain and poor visibility—made it unsafe to drive. *Id.* ¶ 8.

Zebley then asked to search Arrey's vehicle and conduct a field sobriety test, to which Arrey consented. *Id.* ¶¶ 9-10. Arrey claims that no contraband or evidence of illegal activity was found in

1

his car, and he successfully completed the sobriety test without signs of impairment. *Id.* ¶¶ 9, 11. Nevertheless, Zebley arrested Arrey for driving under the influence (DUI), which confused Arrey, who asked for the basis of the arrest. *Id.* ¶¶ 12-13. Zebley explained that Arrey was parked too close to the curb and he believed Arrey had consumed an unknown substance. *Id.* ¶ 13.

Following the arrest, Zebley took Arrey to Crozer Medical Center for a blood draw and then to the police station for questioning. *Id.* ¶¶ 15-16. Throughout, Arrey repeatedly informed Zebley that he "had not consumed any alcohol or drugs and that the blood test results would exonerate him." *Id.* ¶ 17. Six weeks after the arrest, the blood test results came back negative for drugs and alcohol, "confirming [Arrey's] innocence." *Id.* ¶ 18.  Zebley then requested additional testing for specific synthetic drugs, the results of which also came back negative. *Id.* ¶¶ 19-20.

Subsequently, Arrey alleges Zebley filed DUI charges against him. *Id.* ¶ 21. Arrey claims Zebley, in his affidavit supporting the criminal complaint, fabricated a series of false statements with intent to deceive the court including: that there was "vegetable matter"—presumably marijuana—in Arrey's car, that Arrey was parked ten feet from the curb and obstructing traffic, that Arrey had consumed a synthetic drug, and that Arrey was not able to remember basic identifying information, such as his name. *Id.* ¶¶ 22-23

Arrey's probable cause hearing was held on December 12, 2023, during which the prosecutor expressed doubts about the case and decided not to proceed without further investigation. *Id.* ¶ 25. The case was postponed pending additional investigation, including the retesting of Arrey's blood for synthetic drugs. *Id.* ¶ 26. At a hearing on January 18, 2024, the prosecutor informed Arrey that the drug tests had come back negative and all charges would be dropped. *Id.* ¶ 27. Shortly before the hearing, Zebley requested a meeting with the prosecutor. *Id.* ¶ 28. Following the meeting, the prosecutor returned to court and expressed confusion and frustration, "stating that he had been pressured by the Brookhaven Police Department to proceed with the prosecution despite the lack of

evidence." *Id.* ¶ 29. The judge, "sensing the impropriety of the situation," then called a meeting in chambers with Zebley and the prosecutor. *Id.* ¶ 30. The judge recused herself from the case and it was transferred to another county, where charges were later withdrawn. *Id.* ¶ 31.

On February 2, 2024, Arrey filed this pro se action against Zebley and the Brookhaven Police Department alleging various civil rights violations. Since then, Arrey has filed various amended complaints, culminating in the Third Amended Complaint presently before the Court which alleges false arrest, abuse of process, and intentional infliction of emotional distress against Zebley in his individual capacity. Zebley now moves to dismiss all claims against him for failure to state a claim.

**STANDARD**

To survive a motion to dismiss, a plaintiff must plead sufficient facts that when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To make this determination, a reviewing court must (1) determine the elements required to plead each claim, (2) identify which allegations are conclusory and may not be accepted as true, and (3) assess whether the remaining, non-conclusory allegations plausibly entitle the plaintiff to relief. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

Where a plaintiff is pro se, a court is to construe the allegations liberally, applying the "relevant legal principle even when the complaint has failed to name it." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). While this standard affords pro se litigants some flexibility, they must still allege sufficient facts to support their claims. *Vogt*, 8 F.4th at 185. Courts are not tasked with acting "as an advocate to identify any possible claim that the facts alleged could potentially support." *Doe v. Allegheny Cnty. Hous. Auth.*, Civ. No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024).

**DISCUSSION**

Zebley seeks to dismiss Arrey's complaint in its entirety, arguing that none of the three claims are sufficiently plead. The Court agrees with Zebley as to the intentional infliction of emotional distress claim, but finds that at this stage, Arrey has sufficiently alleged his false arrest and abuse of process claims.[1] The Court addresses each claim in turn.

The Court first addresses Arrey's claim for intentional infliction of emotional distress. Zebley moves to dismiss the claim on numerous grounds, including because Arrey has failed to plead facts showing physical harm. The Court agrees and will dismiss Arrey's claim.

To bring a claim for intentional infliction of emotional distress under Pennsylvania law, a plaintiff must establish four elements: (1) extreme and outrageous conduct, (2) intentional or reckless conduct, (3) the conduct caused emotional distress, and (4) the distress was severe. *Zucal v. Cnty. of Lehigh*, Civ. No. 5:21-04598-JMG, 2024 WL 5238267, at *8 (E.D. Pa. Dec. 27, 2024) (citing *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. Ct. 1997), aff'd 720 A.2d 745 (1998)). Additionally, the conduct must also result in "some type of resulting physical harm" to the plaintiff. *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010). Arrey does not allege any physical injury or physical symptoms resulting from Zebley's conduct, instead describing only emotional distress. Because Arrey has not alleged any facts to show he suffered physical harm, the Court will dismiss his claim for intentional infliction of emotional distress.

Next, the Court turns to Arrey's false arrest claim, which Zebley moves to dismiss by arguing that it overly relies upon Arrey's subjective belief that he successfully completed the field sobriety

---

[1] For the second time, the Court will also dismisses with prejudice Arrey's request for declaratory relief because "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct." *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*). As explained in the Court's previous memorandum, Arrey's request for declaratory relief is impermissible because he seeks to adjudicate only past conduct. *See* ECF No. 33. No additional facts in the Third Amended Complaint alter the Court's view.

test and showed no signs of impairment. ECF No. 47 at 7. The Court finds these arguments premature at a motion to dismiss stage. Zebley's motion to dismiss the false arrest claim is therefore denied.

"To bring a claim for false arrest, a plaintiff must establish (1) that there was an arrest; and (2) that the arrest was made without probable cause." *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (internal citation and quotation marks omitted). Probable cause exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Id.* at 199-200 (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)); *see also Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (finding probable cause where "there is a fair probability that the person committed the crime at issue."). Probable cause requires that a police officer have more than "mere suspicion" when making an arrest, but does not require "evidence sufficient to prove guilt beyond a reasonable doubt." *Orsatti*, 71 F.3d at 482-83. When reviewing whether probable cause existed, a court must apply an objective test, considering the "facts available to the officer at the moment of arrest." *Reyes v. DiLuzio*, 495 F. App'x 219, 222 (3d Cir. 2012) (quoting *Barna v. City of Perth Amboy,* 42 F.3d 809, 819 (3d Cir. 1989)).

At this stage, the Court finds Arrey has plausibly claimed that Zebley lacked probable cause to arrest him for driving under the influence. Arrey asserts he passed the field sobriety test and that Zebley found no illegal substances or evidence thereof in his vehicle. While Zebley claimed he arrested Arrey in part because he had consumed an "unknown substance," there is nothing in the Third Amended Complaint to indicate that that belief was based on anything more than "mere suspicion." Nor does Arrey's alleged poor parking, the other reason Zebley gave for Arrey's arrest, give rise to probable cause, particularly considering that the low visibility may have explained Arrey's parking, as Arrey alleges. Third Am. Compl. ¶ 6. Construing the complaint in a light most favorable to Arrey, the facts available to Zebley and the totality of the circumstances at the time of

the arrest would not lead a reasonable person to believe Arrey was committing or had committed an offense. *See Erdreich v. City of Phila.*, Civ. No. 18-2290, 2020 WL 1888957, at *10 (E.D. Pa. Apr. 16, 2020) (plaintiff's false arrest claim for a DUI arrest was viable where the officer "smelled no odor of alcohol" and "saw no physical evidence of alcohol or drugs," among other factors). While the Court agrees with Zebley that the details regarding the sobriety test are sparse, and that ultimately, other facts known to Zebley at the time may show that probable cause existed, at this stage, Arrey has sufficiently plead his claim.

The Court now turns to Arrey's claim for abuse of process, which the Court will also permit to advance to discovery. Under Section 1983, a claim for malicious abuse of process "lies where prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by law." *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989). What distinguishes abuse of process from similar claims is that it is not designed to address "the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings," but rather, centers on the misuse of process once properly initiated. *Dunne v. Township of Springfield*, 500 F. App'x 136, 139 (3d Cir. 2012) (citing Restatement (Second) of Torts § 682 cmt. a (Am. L. Inst. 1977)).

To plead abuse of process, a plaintiff must allege the defendant "(1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Langman v. Keystone Nazareth Bank & Tr. Co.*, 502 F. App'x 220, 224 (3d Cir. 2012) (quoting *Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. Ct. 2008)) *see Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 304 (3d Cir. 2003) (the defendant must have used the "legal process against the plaintiff in a way that constituted a perversion of that process."). The improper purpose must be the *primary* purpose of the proceeding, meaning "there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive or spite or ulterior purpose of benefit to the

defendant." *Id.* at 305 n.2. Accordingly, while there is no cause of action where a defendant has "done nothing more than carry out the process to its authorized conclusion," *Napier v. City of New Castle*, 407 F. App'x 578, 582 (3d Cir. 2010), a party will be held liable for abuse of process where "the utilization of the procedure for the purpose for which it was designed becomes so lacking in justification as to lose its legitimate function." *Gen. Refractories Co.*, 337 F.3d at 308. To make this determination, a court is to ask whether the legal process was used "primarily to benefit someone in *achieving a purpose which is not the authorized goal of the procedure* in question." *Id.* at 305 (internal citation omitted) (emphasis in original). While abuse of process claims are usually brought to address extortion, blackmail, and similar threats, abuse of process may lie where a defendant's primary purpose is to harass and injure a plaintiff through litigation. *Id.* at 305-08; *see also id.* at 305 (describing the Pennsylvania Supreme Court's broad interpretation of abuse of process).

Here, the Court finds a plausible abuse of process claim in so far as Arrey seeks to challenge Zebley's alleged pressuring of the prosecutor to "proceed with the prosecution despite the lack of evidence" after charges had been filed. Third Am. Compl. ¶ 29. [2] [3] Arrey claims Zebley's pursuit of the charges against him was done out of a "desire to harass and harm" him and was "not aimed at bringing [him] to justice." *Id.* ¶ 44. While the Court is unable to say that Zebley's primary purpose was improper, at this stage, Arrey need only establish a plausible claim. *See McTernan v. City of York, PA*, 564 F.3d 636, 646 (3d Cir. 2009) (a plaintiff need only plead sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of the necessary element."). The Court

---

[2] While Arrey did not include earlier portions of his complaint by reference in his abuse of process count, the Court construes his claim liberally because he is pro se. *See Vogt*, 8 F.4th at 185.

[3] Arrey also brings his abuse of process claim to challenge the arrest against him, the filing of the criminal complaint, and other conduct that occurred during or prior to the initiation of criminal proceedings. *See id.* ¶¶ 39-46. The Court dismisses the abuse of process claim as to this conduct because abuse of process cannot be used to address the initiation of criminal proceedings. Additionally, the Court will also not consider Arrey's allegations that Zebley's conduct was motivated by malice, as such allegations are insufficient to plead an abuse of process claim.

finds it plausible Zebley sought to use the criminal proceedings primarily to harass Arrey, particularly because by the time Zebley allegedly pressured the prosecutor to pursue the DUI charges, Arrey had already passed multiple drug tests: an initial test taken immediately after his arrest, additional testing for specific synthetic drugs, and retesting at the prosecution's request after charges had been filed. Moreover, the prosecutor had already planned to drop the DUI charges, and he expressed his frustration and confusion at Zebley's insistence the prosecution continue. As the Third Circuit has described, abuse of process applies when a process is used in a way that "becomes so lacking in justification as to lose its legitimate function." *Gen. Refractories Co.*, 337 F.3d at 308. The Court makes no ultimate determination as to Zebley's primary purpose and holds only that Arrey has alleged sufficient facts at this stage. *See Foster v. City of Philadelphia*, Civ. No. 12-5851, 2013 WL 12149716, at *1, n.1 (E.D. Pa. Sept. 12, 2013) ("Whether [plaintiff] can ultimately demonstrate [defendant's] primary purpose in pursuing this litigation is for another day.").[4] [5]

---

[4] In his motion, Zebley cites to *Napier v. City of New Castle*—an unpublished Third Circuit opinion—to argue Arrey has failed to allege Zebley's action were for any other purpose than obtaining a criminal conviction. In *Napier*, police officers initiated and continued to participate in criminal proceedings against the plaintiff even after realizing they had arrested the wrong person, and did so to avoid embarrassment. The Third Circuit affirmed the dismissal of the abuse of process claim, finding the defendants had done nothing more than carry out the process to its authorized conclusion even if other motivations were involved. Here, the allegations in the Third Amended Complaint do not persuade the Court that Zebley did "nothing more than carry out the process to its authorized conclusion," for the aforementioned reasons. Moreover, there is a meaningful difference between following through with a criminal proceeding to avoid embarrassment as a secondary motivation, and insisting that criminal proceedings continue absent evidence primarily to harass a criminal defendant. *See Gen. Refractories Co.*, 337 F.3d at 305-08 (harassment may give rise to a claim for abuse of process). Again, the Court makes no ultimate determinations as to Zebley's primary purpose and only holds that Arrey has sufficiently plead his claim.

[5] Zebley also moves to dismiss any claims for malicious prosecution, noting that while Arrey has not asserted a separate count for malicious prosecution, he references it in the conclusion of the Third Amended Complaint. *See* Third Am. Compl. ¶ 52. The Court does not interpret this passing reference to indicate that Arrey seeks to replead his claim for malicious prosecution, especially as nowhere in the Third Amended Complaint does Arrey seek to address the deficiencies the Court raised in its previous memorandum dismissing the malicious prosecution claim without prejudice. *See* ECF No. 33. To the extent Arrey meant to replead his claim for malicious prosecution, that claim

**CONCLUSION**

Because Arrey's claims for false arrest and abuse of process are sufficiently pled, the Court will deny Zebley's motion as to those claims. However, because Arrey has failed to allege a plausible claim for intentional infliction of emotional distress, that claim will be dismissed with prejudice. Because Arrey has already had multiple opportunities to plead his claims, the Court will not grant him further leave to amend. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment would be futile where a pro se plaintiff "already had two chances to tell his story.").

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

is now dismissed with prejudice because his Third Amended Complaint did not cure the issues previously raised by the Court. *See id.*