IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRYANT OBEN ARREY | : | CIVIL ACTION |
| | : | |
| v. | : | No. 24-589 |
| | : | |
| OFFICER JONATHAN ZEBLEY | : | |

### MEMORANDUM

**Judge Juan R. Sánchez**                                                                                **November 10, 2025**

      Plaintiff Bryant Arrey brings this 42 U.S.C. § 1983 action against Defendant Officer Jonathan Zebley alleging false arrest and malicious abuse of process related to Arrey's arrest on July 4, 2023 and subsequent prosecution for Driving Under Influence of Alcohol or Controlled Substance ("DUI"). Zebley moves for summary judgment on both of Arrey's claims. The Court will deny Zebley's motion because both the false arrest and malicious abuse of process claims present genuine disputes of material facts and those factual disputes also preclude qualified immunity at this stage of the case.

**BACKGROUND**

      During a rainy night on July 4, 2023, Plaintiff Bryant Arrey, an Uber driver, was asleep in his car while parked a few feet from the curb on a residential street in Brookhaven, Delaware County. Arrey Dep. 104:14-105:24, Dkt. No. 60-5; Body Camera Video of Officer Zebley ("BC Video") 1:51-1:52, Dkt. No. 60-14. Defendant Jonathan Zebley, a Brookhaven Police Department officer on patrol, saw Arrey's vehicle parked off the curb into the street and stopped to investigate. Zebley Dep. 54:21-56-4, 60:22-61:4, Dkt. No. 60-3. Brookhaven Officer Gregory Martin and Chester Township Officer Michael Strofe also responded to the scene. Martin Dep. 15:17-17:2, Dkt. No. 60-4. Zebley activated his body worn camera, approached the car, and knocked on the window waking up Arrey. BC Video 0:00-2:25. Zebley stated Arrey was parked around 10 feet from the

1

curb then asked Arrey what he was doing. *Id.* 2:32-3:27. Arrey explained he was an Uber driver and had pulled over to nap before continuing to work because business had been slow and he was feeling a little dizzy. *Id.* Zebley then stated Arrey's eyes were very red, and Arrey explained his arm had been over his face and eyes. *Id.* 3:27-3:37.

Zebley then asked to conduct a field sobriety test, to which Arrey consented. *Id.* 5:15-5:30. Zebley had Arrey perform six different tests pursuant to Standard Field Sobriety Testing (SFST) and Advanced Roadside Impaired Driving Enforcement (ARIDE). *Id.* 5:30-16:50; Police Incident File, Dkt. No. 60-9 at 5. These tests included the Horizontal Gaze Nystagmus, the Walk-and-Turn, the One-Leg Stand, Lack of Convergence, Modified Romberg, and the Finger-to-Nose. *Id.* After administering the tests, Zebley decided to arrest Arrey based his observations. BC Video 16:57-17:16. Officer Gregory Martin conducted an inventory of Mr. Arrey's vehicle. Martin Dep. 26:2-19; Police Incident File, Dkt. No. 60-9 at 5. Officer Martin did not document or collect any marijuana, illicit substances, or drug paraphernalia during his search of the vehicle. Police Incident File, Dkt. No. 60-9 at 5.

Arrey alleges he successfully completed the sobriety tests without signs of impairment and there was no indication of drug or alcohol use on the scene. Arrey Dep. 143:1, 185:23-188:7. Zebley claims Arrey failed the Walk-and-Turn test. Zebley Dep. 188:11-20, 191:13-192:10. Zebley also claims he saw marijuana "shake" on Arrey's pants and on the floor of Arrey's vehicle. *Id.* 66:6-67:4; Police Incident File, Dkt. No. 60-9 at 4. He did not observe any other illicit substances, or drug paraphernalia in the vehicle or on Arrey's person. Police Incident File, Dkt. No. 60-9 at 4. Zebley and the other police officers did not detect any alcohol or marijuana odors. *Id.*

Following the arrest, Zebley took Arrey to Riddle Hospital where Arrey consented to a blood draw. Zebley Dep. 81:11-19; Police Incident File, Dkt. No. 60-9 at 4, 16. Then Zebley drove Arrey to the police station for questioning. Zebley Dep. 81:2-82:2. At the station, Arrey declined to answer

2

many basic questions asked by Zebley and Martin.  Arrey Dep. 154:13-156:2, 157:16-23; Martin Dep. 61:4-8, 64:4-18.  Throughout, Arrey repeatedly informed Zebley that he had not consumed any alcohol or drugs and that the blood test results would exonerate him.  Arrey Dep. 155:9-12.  Around two weeks after the arrest, on July 14, 2023, the blood test results came back negative for drugs and alcohol.  NMS Drug Report, Dkt. No. 60-10 at 3, 10.  Zebley then requested additional testing for synthetic drugs.  *Id.* 7-9.  The second test panel tested specifically for synthetic marijuana.  *Id.* at 2.  On August 1, 2023, the result of this second test came back negative for any synthetic marijuana.  *Id.*

Subsequently, Zebley filed an Affidavit of Probable Cause against Arrey supporting a criminal complaint for DUI on September 4, 2023.  Aff. of Probable Cause 1, Dkt. No. 60-11.  Zebley, in his Affidavit, stated there were "[s]mall flakes of vegetable matter" in Arrey's car and on his person, Arrey had "reddened, glassy eyes," Arrey was parked ten feet from the curb and obstructing traffic, Arrey was suspected to be under the influence of synthetic marijuana, and Arrey was not able to recall basic identifying information, such as his place of birth, height, weight, and social security number.  *Id.*  Magistrate Judge Georgia Stone signed the Affidavit of Probable Cause and the Complaint on September 11, 2023.  Magisterial Ct. Dkt. 32-2-39 at 1, Dkt. No. 60-12.

Assistant District Attorney Jack Meehan from the Office of the District Attorney of Delaware County was assigned to Arrey's case.  Meehan Aff., Dkt. No. 60-7.  On November 9, 2023, Arrey's first scheduled probable cause hearing was continued because the District Attorney's Office requested Arrey's collected blood be tested for more panels or be sent to a different laboratory before proceeding.  Police Incident File, Dkt. No. 60-9 at 6; Magisterial Ct. Dkt. 32-2-39 at 2.  No further testing was conducted.  The probable cause hearing was rescheduled for December 12, 2023, then continued.  Magisterial Ct. Dkt. 32-2-39 at 2.

The probable cause hearing was eventually held on January 18, 2024. Arrey alleges at the hearing, Meehan told him the blood results came back negative, and the charges would be dropped. Arrey. Dep. 174:8-10, 175:1-6. Then Meehan left the courtroom for 15 minutes, returning with Zebley and other officers. *Id.* at 174:11-17. When Meehan passed Arrey, he said "I don't know why this guy wants to pursue this case." *Id.* 174:17-25. Meehan then tried to move forward on the hearing. *Id.* 174:16-176:23. Meehan denies making these statements and being pressured by Zebley in this prosecution. Meehan Aff. Zebley asserts that at the probable cause hearing, Judge Georgia Stone disclosed she had been contacted by Arrey via email and offered to recuse herself because he provided an explanation of the arrest incident in his email. Police Incident File, Dkt. No. 60-9 at 6.

On January 26, 2024, the case was transferred to Magistrate Judge Diane Holefelder. Magisterial Ct. Dkt. 32-2-38 at 1, Dkt. No. 60-13. On January 30, 2024, the District Attorney's Office decided not to prosecute the case and withdrew all charges against Arrey. Police Incident File, Dkt. No. 60-9 at 6; Magisterial Ct. Dkt. 32-2-38 at 2.

On February 2, 2024, Arrey filed this action, initially pro se, against Zebley and the Brookhaven Police Department, alleging false arrest, abuse of process, malicious prosecution, conspiracy, supervisory liability, and intentional infliction of emotional distress. Dkt. No. 1. The Court allowed the false arrest and abuse of process claims to move forward and dismissed all other claims. Dkt. Nos. 49 & 50. Arrey then acquired legal counsel to represent him in this action. Zebley now moves to dismiss all claims against him on summary judgment.

**STANDARD**

A court will grant summary judgment if a moving party can establish "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). The moving party bears the initial burden of identifying the parts of the record which it believes

4

demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to show there is a genuine issue of material fact requiring the case to proceed to trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is "material" if it could affect the outcome of the suit—as determined based on the substantive law governing the issue—and a dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248.

In reviewing a motion for summary judgment, a court must "view the facts in the light most favorable to the non-moving party and [draw] all reasonable inferences in that party's favor." *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 345 (3d Cir. 2022) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). A court is to consider the parts of the record cited by the parties—such as depositions, documents, and affidavits—and may consider other parts of the record. Fed. R Civ. P. 56(c). A "district court may not make credibility determinations or engage in any weighing of the evidence." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004).

**DISCUSSION**

Zebley argues he should be awarded summary judgment on both the false arrest and malicious abuse of process claims because he had probable cause to arrest Arrey for DUI, Arrey has not provided sufficient evidence proving abuse of process, and qualified immunity prevents suit against Zebley. The Court will deny summary judgment in full because it identifies multiple genuine disputes of material facts for both claims and those factual disputes preclude qualified immunity at this stage. The Court addresses each claim in turn.

The Court first turns to Arrey's false arrest claim. "To bring a claim for false arrest, a plaintiff must establish (1) that there was an arrest; and (2) that the arrest was made without probable cause." *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (internal citation and quotation marks

5

omitted). Probable cause exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Id.* at 199-200 (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)); *see also Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (finding probable cause where "there is a fair probability that the person committed the crime at issue."). Specifically, probable cause requires that a police officer have more than "mere suspicion" when making an arrest but does not require "evidence sufficient to prove guilt beyond a reasonable doubt." *Orsatti*, 71 F.3d at 482-83. When reviewing whether probable cause existed, a court must apply an objective test, considering the "facts available to the officer at the moment of arrest." *Reyes v. DiLuzio*, 495 F. App'x 219, 222 (3d Cir. 2012) (quoting *Barna v. City of Perth Amboy,* 42 F.3d 809, 819 (3d Cir. 1989)). Assessing whether probable cause exists based upon the totality of the circumstances is "necessarily fact-intensive and thus it will usually be appropriate for a jury to determine whether probable cause existed." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468 (3d Cir. 2016). In determining probable cause, arresting officers must consider plainly exculpatory evidence in addition to inculpatory evidence. *Harvard*, 973 F.3d at 200 (citing *Wilson*, 212 F.3d at 790).

The Court finds multiple genuine issues of material fact as to whether Zebley had probable cause to arrest Arrey, which must be resolved at trial. Zebley articulates Arrey's poor parking, the presence of marijuana "shakes" at the scene of the arrest, Arrey's red and glassy eyes, and Arrey's performance on sobriety tests as his basis for probable cause to arrest Arrey for Driving Under Influence of Alcohol or Controlled Substance (DUI) on July 4, 2023. Police Incident File, Dkt. No. 60-9 at 4-5. Under 75 Pa. Const. Stat. § 3802, a DUI conviction in Pennsylvania requires proof that a person (1) "dr[ove] or operat[ed] a vehicle" and (2) was "under the influence of a drug to a degree [which] impaired [their] ability to safely drive that vehicle." *Commonwealth v. Hutchins*, 42 A.3d

6

302, 307 (Pa. Super. Ct. 2012) (citation omitted). At the summary judgment stage, viewing all inferences in favor of Arrey, many of the facts regarding whether Zebley had probable cause to arrest Arrey for DUI are in dispute. Arrey produces an expert report and his own testimony as contrary evidence challenging Zebley's basis for probable cause. *See generally* Pl.'s Expert Report (Dkt. No. 64-2); Bryant Arrey Dep.

Zebley points to the presence of "small flakes of vegetable matter" or "shakes" on Arrey's pants and in his vehicle as indications of marijuana usage by Arrey justifying probable cause for arrest. Police Incident File, Dkt. No. 60-9 at 4. Arrey disputes the existence of these "shakes" and testified "[t]here was no vegetable matter in my car. And Officer Zebley lied." Arrey Dep. 185:23-188:7. Officer Gregory Martin, who was at the scene of the arrest, testified to seeing the driver's side floor "cover[ed] in shake." Martin Dep. 20:16-21:4. But Officer Michael Strofe, who was also at the scene, did not observe any marijuana. Strofe Dep. 24:15-16, Dkt. No. 64-4. Additionally, Zebley's body worn camera footage taken on the night of the arrest does not show "shakes" either on Arrey's body or in his car. None of the officers photographed or collected any evidence of these "shakes," either on the night of the arrest or afterward. Viewing the evidence in the light most favorable to Arrey, a reasonable jury could credit Arrey's account that the shakes did not exist at the scene especially after making credibility determinations regarding these conflicting accounts. *See, e.g.*, *Karnes v. Skrutski*, 62 F.3d 485, 498 (3d Cir. 1995), *abrogated on other grounds by Curley v. Clem*, 499 F.3d 199 (3d Cir. 2007) ("We must determine whether a reasonable jury could decide that a police officer could have formed an objectively reasonable belief that the 'vegetable matter' was marijuana. . . . We believe this contradictory testimony creates a genuine issue of material fact . . . .").

Zebley states at the time of the arrest, Arrey had glassy and red eyes. Although the video shows Arrey's eyes multiple times, it is not clear from the video that his eyes were red. Zebley also

7

states the exact distance of Arrey's car from the curb on the night of the arrest was 10 feet. Brookhaven Police Incident File, Dkt. No. 60-9 at 4. Arrey maintains his car was closer to the curb than Zebley represented. Arrey Dep. 122:24-25. The body worn camera video is also unclear on the distance of the car to the curb due to the rain and lack of light on the street. BC Video 0:00-2:25. A reasonable jury viewing the video and hearing Arrey's testimony could find the car was closer than 10 feet.

At the time of the arrest, Zebley administered multiple "sobriety tests" to Arrey and pointed to Arrey's failure of these tests as justification for the arrest. Arrey asserts he passed all the tests which show his sobriety at the time. First, there is a material dispute as to whether Zebley's administration of the tests and assessment of his performance were reasonable to justify the arrest. Arrey's expert points to several ways in which Zebley deviated from law enforcement standards in conducting the tests and interpreting Arrey's performance, such as misinterpreting Arrey's pupil size as an indication that he is under the influence of synthetic marijuana. Pl.'s Expert Report 15-17, 21-22. Second, a jury would not be bound to follow the standards and criteria set for the sobriety tests. Many of the sobriety tests' criteria for success or failure appear extremely subjective and vague. Police Incident File, Dkt. No. 60-9 at 5. A reasonable jury could view Arrey's performance on the tests as sufficient to demonstrate his lack of intoxication at that time.

Zebley argues his arrest had probable cause because a magistrate judge approved his affidavit for probable cause. The ultimate disposition of the disputed facts also impacts Arrey's claim as it relates to whether the statements put forth in Zebley's affidavit for probable cause were false. When an officer arrests an individual pursuant to a valid warrant, a false arrest probable cause analysis focuses on whether the officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997). The Court must consider "two elements:

8

first, whether the officer, with at least a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant, and second, whether those assertions or omissions were 'material, or necessary, to the finding of probable cause." *Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017) (citation omitted).

In this affidavit, Zebley wrote "[s]mall flakes of vegetable matter were observed on Mr. Arrey's pants and flakes of a vegetable matter was found on the driver's floor." Aff. of Probable Cause 1. He also wrote Arrey had "reddened, glassy eyes" and Arrey's car was "parked approximately 10 feet from the curb and was blocking the west bound lane." *Id.* As stated above, these material facts are genuinely disputed by the parties.

Additionally, Zebley in the affidavit stated, "[t]he results of Mr. Arrey's submitted blood from NMS Labs showed that no positive findings of toxicological significance for the two tested panels for known intoxicants. It is believed that Mr. Arrey was under the influence of a synthetic cannabinoid variation that would not show on current testing panels." *Id.* at 2. Arrey argues this language is deceptive since it implies synthetic cannabinoids were not tested at all in either of the two panels. Zebley asserts this statement was truthful because the two panels were tested with no positive results, but the synthetic marijuana suspected would not show up on any current test. A jury could interpret this statement either way.

Zebley also stated "[d]uring processing, Mr. Arrey had trouble recalling where he was born, how tall he was, how much he weighed and his social security number. Mr. Arrey stated he did not remember the PennDot-26B form being read to him and would not sign the acknowledgement section of the form." *Id.* at 2. Arrey disputes this characterization of his demeanor and behavior. He testified he did not answer these questions because he was angry about being arrested, not due to a physical inability to recall. Arrey Dep. 154:13-156:2, 157:16-23. Officer Martin also perceived Arrey's non-responsiveness as stemming from anger. Martin Dep. 61:4-8, 64:4-18.

9

Viewed in the light most favorable to Arrey, a reasonable jury could find Zebley falsely made these statements and omissions "with at least a reckless disregard for the truth" and "those assertions or omissions were material, or necessary, to the finding of probable cause." *Andrews*, 853 F.3d at 697 (citation omitted). Therefore, genuine disputes of material fact exist regarding whether Zebley had probable cause to arrest Arrey on July 4, 2023 or file an affidavit of probable cause on September 4, 2023.

The Court now turns to Arrey's claim for malicious abuse of process. Under Section 1983, a claim for malicious abuse of process "lies where prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by law." *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989). What distinguishes abuse of process from similar claims is that it is not designed to address "the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings," but rather, centers on the misuse of process once properly initiated. *Dunne v. Twp. of Springfield*, 500 F. App'x 136, 139 (3d Cir. 2012) (citing Restatement (Second) of Torts § 682 cmt. a (Am. L. Inst. 1977)).

To prove abuse of process, a plaintiff must establish the defendant "(1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Langman v. Keystone Nazareth Bank & Tr. Co.*, 502 F. App'x 220, 224 (3d Cir. 2012) (quoting *Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. Ct. 2008)); *see Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 304 (3d Cir. 2003) (finding the defendant must have used the "legal process against the plaintiff in a way that constituted a perversion of that process"). The improper purpose must be the *primary* purpose of the proceeding, meaning "there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive or spite or ulterior purpose of benefit to the defendant." *Gen. Refractories Co.*, 337 F.3d at 305 n.2 (citation omitted).

10

Accordingly, while there is no cause of action where a defendant has "done nothing more than carry out the process to its authorized conclusion," *Napier v. City of New Castle*, 407 F. App'x 578, 582 (3d Cir. 2010), a party will be held liable for abuse of process where "the utilization of the procedure for the purpose for which it was designed becomes so lacking in justification as to lose its legitimate function." *Gen. Refractories Co.*, 337 F.3d at 308. To make this determination, a court is to ask whether the legal process was used "primarily to benefit someone in *achieving a purpose which is not the authorized goal of the procedure* in question." *Id.* at 305 (internal citation omitted) (emphasis in original). While abuse of process claims are usually brought to address extortion, blackmail, and similar threats, abuse of process may lie where a defendant's primary purpose is to harass and injure a plaintiff through litigation. *Id.* at 305-08; *see also id.* at 305 (describing the Pennsylvania Supreme Court's broad interpretation of abuse of process).

The Court also identifies a genuine dispute of material fact in Arrey's abuse of process claim. The main issue for this claim is whether Zebley's continual pursuit of charges against Arrey was done primarily to accomplish a purpose for which the process was not designed. Arrey alleges Zebley's pursuit of the charges against him was done out of a "desire to harass and harm" him and was "not aimed at bringing [him] to justice." Third Am. Compl. ¶ 44, Dkt. No. 46. Arrey claims Zebley caused "the prosecution to proceed for more than a month after [he] knew Arrey's blood test was negative." Pl.'s Resp. 12, Dkt. No. 64. The record is not clear on when the blood test reports were passed from Zebley to the District Attorney's Office. Neither Zebley nor Meehan could remember whether or when the blood report was passed over. Zebley Dep. 105:9-107:20; Meehan Dep. 19:9-11. The documents in the record also do not indicate when the reports were passed. Crediting Arrey's version of events, a reasonable jury could regard this delay as proof that Zebley intended to continue the prosecution to harass Arrey instead of prosecuting him.

Additionally, the issue of whether Zebley pressured Meehan to continue the prosecution is in dispute. Arrey asserts Meehan indicated he was going to drop the DUI charges after seeing the blood test results on January 18, 2024, but then reversed his decision after being pressured by Zebley. Meehan "categorically den[ies] making any such statements" and denies having been "pressured in any way to make any prosecutorial decisions in the case by Officer Zebley." Meehan Aff.[1] Zebley argues "the court should believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 271-72 (3d Cir. 2007). However, Meehan's testimony is contradicted because Arrey directly testified Meehan made statements to him at the January 18, 2024 hearing and "was always talking to me." Arrey Dep. 174:8-19, 178:7-15. A "witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment[,] . . . even where, as here, the information is self-serving." *Paladino v. Newsome*, 885 F.3d 203, 209 (3d Cir. 2018). Arrey's deposition testimony sets "forth specific facts that reveal a genuine issue of material fact" regarding his abuse of process claim. *Id.*; *see Di Maggio v. O'Brien*, 497 F. Supp. 870, 878 (E.D. Pa. 1980) ("Plaintiff does however properly allege a due process claim. In his factual averments he states that he was charged with and arrested for criminal violations of building, construction, and zoning regulations without just or probable cause, and that the purpose was to harass and drive him out of business and out of the area.").

The Court now must address whether Zebley is entitled to qualified immunity at this stage. "An official sued under § 1983 for an alleged constitutional violation is entitled to qualified immunity unless [the official] (1) violated a constitutional right that (2) was clearly established when he acted." *Stringer v. Cnty. of Bucks*, 141 F.4th 76, 85 (3d Cir. 2025). "'[T]he party asserting the

---

[1] The Court notes Meehan also testified to having little or no memory of what happened in Arrey's prosecution. *See, e.g.*, Meehan Dep. 14:4-15:6, 16:13-15.

affirmative defense of qualified immunity' bears the burden of persuasion on both prongs at summary judgment." *Mack v. Yost*, 63 F.4th 211, 227 (3d Cir. 2023) (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014)).

"A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Wright v. City of Phila.*, 409 F.3d 595, 600 (3d Cir. 2005) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). As stated above, the facts taken in the light most favorable to Arrey show Zebley violated the Fourth and Fourteenth Amendments through false arrest and malicious abuse of process.

Once "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* (quoting *Katz*, 533 U.S. 194, 201 (2001)). "A right is clearly established if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Urda v. Sokso*, 146 F.3d 311, 314 (3d Cir. 2025) (quoting *Katz*, 533 U.S. at 202). While there need not be "a case directly on point, . . . existing precedent must have placed the . . . constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). So, Zebley is entitled to qualified immunity "if a reasonable officer could have believed that probable cause existed" to arrest the Arrey "in light of clearly established law and the information the [arresting] officers possessed" in 2023. *Blaylock v. City of Phila.*, 504 F.3d 405, 411 (3d Cir. 2007) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228-29 (1991)).

The Court finds the rights here were clearly established at the time of the arrest and prosecution. False arrest is a claim to vindicate "the right to be free from arrest except on probable cause." *Andrews*, 854 F.3d at 705; *see also Pinkney v. Meadville*, 95 F.4th 743, 749 (3d Cir. 2024). "It is well established that police officers must have probable cause to arrest and charge suspects. If they do not, they may be liable for false arrest." *Lozano v. New Jersey*, 9 F.4th 239, 242 (3d Cir.

13

2021) (citation omitted). The right to be free from false arrest extends to DUI offenses. *See Havard*, 973 F.3d at 201-02 (reversing a summary judgment dismissal of a false arrest claim when an officer arrested the plaintiff for a DUI offense by discounting exculpatory indications that he was not under the influence of a drug to the degree which impairs his ability to safely operate his vehicle); *Commonwealth v. Kohl*, 576 A.2d 1049, 1053-54 (Pa. Super. Ct. 1990) ("[P]olice did not have probable cause to believe appellant was driving under the influence. In the absence of any evidence of alcohol or drug use, the occurrence of a one-car accident during the early morning hours of a clear, dry day in an area with a low accident incidence rate is not a sufficient factual basis to support the belief that the driver was under the influence of alcohol."), *aff'd*, 615 A.2d 308 (Pa. 1992). Tailored more narrowly to the facts of the present case, a clearly established Fourth Amendment violation occurs when an officer seizes a driver based on an unreasonable belief that "vegetable matter" found on the floor of the vehicle was marijuana. *See Karnes*, 62 F.3d at 493-94, 496.

Additionally, there is a violation of a clearly established right when "police [leave] material information out of an affidavit supporting their arrest-warrant application." *Urda*, 146 F.4th at 314 (citing *Andrews*, 854 F.3d at 703-05). This right was clearly established by 2023. *Malley v. Briggs*, 475 U.S. 335, 344-55 (1986); *Lippay v. Chirstos*, 996 F.2d 1490, 1504 (3d Cir. 1993) ("If a police officer submits an affidavit containing statements he knows to be false or would know are false if he had not recklessly disregarded the truth, the officer obviously failed to observe a right that was clearly established. Thus, he is not entitled to qualified immunity.").[2] So, Zebley "would not be

---

[2] Other circuits also find a violation of a clearly established right occurs when an officer submits a false affidavit, putting the constitutional question beyond debate. *See Hervey v. Estes*, 65 F.3d 784, 788 (9th Cir. 1995) (holding that if officer submitted an affidavit that contained statements he knew to be false "the shield of qualified immunity is lost"); *Kelly v. Curtis*, 21 F.3d 1544, 1555 (11th Cir. 1994) (holding that officer had violated a clearly established constitutional right by seeking arrest warrant on conclusory affidavit); *Olson v. Tyler*, 771 F.2d 277, 282 (7th Cir. 1985) (stating that "in

14

entitled to qualified immunity here because 'an apparently valid warrant does not render an officer immune from suit if his reliance on it is unreasonable in light of the relevant circumstances.'" *Fallen v. McEnroe*, No. 23-2312, 2025 WL 32816, at *4 (3d Cir. Jan. 6, 2025) (citing *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 273 (3d Cir. 2000) (per curiam) (explaining that such "circumstances include, but are not limited to, other information that the officer possesses or to which he has reasonable access"); *see also Wilson*, 212 F.3d at 786.

Malicious abuse of process has also been clearly established to be "by definition a denial of procedural due process" rights. *Jennings v. Shuman*, 567 F.2d 1213, 1220 (3d Cir.1977); *Rose*, 871 F.2d at 350 n.17 (3d Cir. 1989). Other circuit courts have also found a constitutional right within a malicious abuse of process claim. *See also Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) ("If [plaintiff]'s malicious abuse of process allegations are true, then, the Troopers violated his clearly established due process rights."); *Cramer v. Crutchfield*, 648 F.2d 943, 945 (4th Cir. 1981); *Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs*, 263 F.3d 1151, 1155 n.5 (10th Cir. 2001).

Viewing the facts in the light most favorable to Arrey, Zebley did violate clearly established rights in allegedly arresting Arrey for DUI with no probable cause, omitting and distorting material information in his affidavit for probable cause, and using the DUI prosecution to harass Arrey. As a result, Zebley is not entitled to qualified immunity at this stage of the litigation.

This case presents genuine disputes of material fact on both Arrey's false arrest and malicious abuse of process claims which this Court cannot resolve at summary judgment. These disputes also preclude qualified immunity for Zebley before trial. Therefore, Zebley's motion for summary judgment is denied and the parties will proceed to trial on the false arrest and malicious prosecution claims.

---

cases in which suppression would be warranted because an officer was dishonest or reckless in preparing a warrant affidavit, that officer would not enjoy good faith immunity for civil damages").

**CONCLUSION**

Accordingly, the Court will deny Defendant Jonathan Zebley's motion for summary judgment.

An appropriate Order follows.

BY THE COURT:

<u>/s/ Juan R. Sánchez</u>
Juan R. Sánchez, J.